IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., et al. | § § § § | Case No. 07-11047 (CSS) (Jointly Administered) |
| Debtors. | § | |
| CALYON NEW YORK BRANCH, | § § | |
| Plaintiff and Counterclaim Defendant, | § § § | |
| v. | § § § | Adversary No. 07-51704 |
| AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE SERVICING, INC., AMERICAN HOME MORTGAGE ACCEPTANCE, INC., and AMERICAN HOME MORTGAGE INVESTMENT CORP., | § § § § § § § § | |
| Defendants and Counterclaim Plaintiffs. | § § | |

**OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF CALYON NEW YORK BRANCH REGARDING FIRST COUNTERCLAIM**

HUNTON & WILLIAMS LLP
Benjamin C. Ackerly
Jason W. Harbour (DE No. 4176)
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

- and -

Peter S. Partee
Scott H. Bernstein
200 Park Avenue, 53rd Floor
New York, New York 100166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

ECKERT SEAMANS CHERIN
& MELLOTT, LLC
Michael G. Busenkell (DE No. 3933)
Margaret F. England
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Telecopier: (302) 425-0432

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II. SUMMARY OF ARGUMENT ......................................................................................... 2

III. STATEMENT OF FACTS ................................................................................................ 2

IV. ARGUMENT ..................................................................................................................... 5

    A. Standard For Summary Judgment ........................................................................ 5

    B. Calyon Is Entitled To Summary Judgment On The Counterclaim Because The Repurchase Agreement Meets The Definition Of "Repurchase Agreement" In Section 101(47) Of The Bankruptcy Code. ................................... 7

        i. Legal Standard. ......................................................................................... 8

        ii. The Repurchase Agreement Meets The Definition In 11 U.S.C. § 101(47). ................................................................................................... 12

V. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE**

CASES

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 250 (1986) .................................................................................. 5, 6

Burns v. County of Cambria,
    764 F. Supp. 1031, 1035 (W.D. Pa. 1991),
    aff'd in part, 971 F.2d 1015 (3d Cir. 1992) ............................................................ 6

Celotex Corp. v. Catrett,
    477 U.S. 317, 327 (1986) .................................................................................. 5, 7

Colgan v. Fisher Scientific Co.,
    935 F.2d 1407, 1413 (3d Cir. 1991) ...................................................................... 6

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 587 (1986) .................................................................................. 5, 6

Medino-Munoz v. R.J. Reynolds Tobacco Co.,
    896 F.2d 5, 8 (1st Cir. 1990) .................................................................................. 6

Sumitomo Bank of New York Trust Co. v. Town of North Hempstead,
    278 A.D.2d 402, 403, 717 N.Y.S.2d 363, 365 (N.Y. App. Div. 2000) ................ 9

Williams v. West Chester,
    891 F.2d 458, 463-64 (3d Cir. 1989) .................................................................... 6

STATUTES

Fed. R. Civ. P. 56(c) ........................................................................................................ 5

# I. NATURE AND STAGE OF PROCEEDINGS

On August 6, 2007, American Home Mortgage Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Acceptance, Inc., and American Home Mortgage Investment Corp. (collectively, "Debtors" or "Counterclaim Plaintiffs"), filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

On August 28, 2007, Calyon New York Branch, as Administrative Agent ("Calyon" or "Counterclaim Defendant"), filed its Complaint and Request for Declaratory Judgment, Injunctive Relief and Damages (the "Complaint"). In the Complaint, Calyon seeks declaratory and injunctive relief, and damages, due to the termination of the Repurchase Agreement (as defined below) and the Debtors' failure and refusal to take the actions required by such termination, including, without limitation, transferring certain records and funds as required to transition the servicing of certain mortgage loans. In support of the Complaint, Calyon submitted the Declaration of Alan Sidraine in Support of (I) Complaint and Request for Declaratory Judgment, Injunctive Relief and Damages; and (II) Motion of Plaintiff Calyon New York Branch for a Preliminary Injunction and Declaratory and Injunctive Relief (the "Declaration"). Calyon incorporates the Complaint, including the Exhibits thereto, and the Declaration herein by reference.

On September 11, 2007, the Debtors filed their Answer (the "Answer") and First Counterclaim (the "Counterclaim"). In the Counterclaim, the Debtors seek a declaratory judgment that the Repurchase Agreement is not a repurchase agreement within the meaning of section 101(47) of the Bankruptcy Code because it is a secured financing.

On September 21, 2007, Calyon filed its Motion for Summary Judgment Regarding Counterclaim (the "Motion"). Through the Motion, Calyon seeks summary judgment on the Counterclaim because the undisputed facts demonstrate that the Repurchase Agreement is a

repurchase agreement within the meaning of section 101(47) of the Bankruptcy Code and, thus, as a matter of law the Repurchase Agreement may not be recharacterized or treated as a secured financing.

Calyon intends to request that the Court hear oral argument on the Motion on or about October 16, 2007, prior to the Phase I Trial in this adversary proceeding.

## II. SUMMARY OF ARGUMENT

1. There are no material facts in dispute regarding whether the Repurchase Agreement is a "repurchase agreement" as defined by section 101(47) of the Bankruptcy Code.

2. The Repurchase Agreement is a "repurchase agreement" as defined by section 101(47) of the Bankruptcy Code because the Repurchase Agreement provides for the transfer of one or more mortgage loans or interests in mortgage loans against the transfer of funds by the transferee of such mortgage loans or interests, with a simultaneous agreement by such transferee to transfer to the transferor thereof mortgage loans or interests in mortgage loans at a date certain not later than 1 year after such transfer or on demand, against the transfer of funds.

3. Thus, Calyon is entitled to summary judgment on the Counterclaim because the Repurchase Agreement is a "repurchase agreement" as defined by section 101(47) of the Bankruptcy Code, and therefore the Repurchase Agreement is protected by the safe harbor provisions of section 559 of the Bankruptcy Code.

## III. STATEMENT OF FACTS

Calyon and the Debtors are parties to that certain Repurchase Agreement dated November 21, 2006, executed by and among La Fayette Asset Securitization LLC, as an Issuer, Amsterdam Funding Corporation, as an Issuer, Barton Capital LLC, as an Issuer, Park Avenue Receivables Company, LLC, as an Issuer, Starbird Funding Corporation, as an Issuer, Calyon, as a Bank, a Managing Agent and as a Administrative Agent, Lloyds TSB Bank PLC, as a Bank,

ABN AMRO Bank N.V., as a Managing Agent and as a Bank, Societe Generale, as a Managing Agent and as a Bank, JP Morgan Chase, N.A., as a Managing Agent and as a Bank, BNP Paribas, as a Managing Agent and as a Bank, and the Debtors (the "Repurchase Agreement").[1] A true and correct copy of the Repurchase Agreement is attached as <u>Exhibit A</u>, and is incorporated herein by reference.[2]

The Repurchase Agreement provides for the transfer of one or more mortgage loans or interests in mortgage loans from the Debtors to the Purchasers (as defined in the Repurchase Agreement) against the transfer of funds from the Purchasers to the Debtors, with a simultaneous agreement by the Purchasers to transfer to the Debtors the mortgage loans or interests in the mortgage loans not later than one hundred eighty (180) calendar days after the initial transfer, against the transfer of funds from the Debtors to the Purchasers. *See* Repurchase Agreement.

Specifically, the Repurchase Agreement states,

> the Sellers have requested that the Administrative Agent, on behalf of the Purchasers, from time to time enter into transactions ("Transactions"), pursuant to which, on the applicable Purchase Date, the applicable Seller shall sell and the Purchasers shall purchase certain Eligible Mortgage Loans, with each Purchaser purchasing undivided ownership interests in such Eligible Mortgage Loans, pursuant to Transactions, against payment by the Purchasers of an amount equal to the Purchase Price for such Eligible Mortgage Loans with a simultaneous agreement by the Sellers, jointly and severally, to repurchase the Purchased Mortgage Loans on the applicable Repurchase Date by payment to the Administrative Agent for the account of the Purchasers of an amount equal to the related Repurchase Price.

---

[1]  Capitalized terms not defined herein shall have the meanings given to them in the Repurchase Agreement.

[2]  The same copy of the Repurchase Agreement also was attached to the Complaint as Exhibit A, and the Debtors admitted that Exhibit A to the Complaint is a copy of the Repurchase Agreement. *See* Answer, ¶ 10. Nevertheless, for ease of review, the same true and correct copy of the Repurchase Agreement is attached hereto as Exhibit A. *See also* Declaration, ¶ 6 (stating that a true and correct copy of the Repurchase Agreement is attached to the Complaint).

*Id.* at 2.

Section 3.3(a) of the Repurchase Agreement states that "[i]t is understood and agreed that the Purchasers own 100% of the beneficial interests in and to the Mortgage Loans purchased hereunder." *Id.* § 3.3(a). Section 2.24 of the Repurchase Agreement provides that "[u]pon transfer of the Mortgage Loans to Purchasers as set forth in Section 2.3, ownership of each Mortgage Loan, including each document in the related Mortgage File, is vested in the Purchasers." *Id.* § 2.24. Section 2.24 also provides that

> Nothing in this Repurchase Agreement shall preclude the Purchasers from engaging in repurchase transactions with the Purchased Mortgage Assets or otherwise pledging, selling, assigning or hypothecating the Purchased Mortgage Assets without the prior consent of the applicable Seller, but no such transaction or provision hereof or provision of the Custodial Agreement shall relieve the Purchasers of their obligations to transfer Purchased Mortgage Assets (and with respect to the Mortgage Loans, the same Mortgage Loans and not substitutes therefor) to such seller pursuant to Sections 2.3, 2.5, or 8.1 hereof.

*Id.* § 2.24. Sections 2.1, 2.3, 2.23, 2.24, 3.2, 3.3 and 4.2, of the Repurchase Agreement, among others, provide additional details regarding the agreement to transfer mortgage loans or interests in mortgage loans from the Debtors to the Purchasers against the transfer of funds from the Purchasers to the Debtors.

The Repurchase Agreement further provides that, "[s]imultaneously with each Purchase, the Sellers hereby promise, jointly and severally, to pay in full on the related Repurchase Date the aggregate Repurchase Price relating to the Purchased Mortgage Assets being repurchased by the Sellers." *Id.* § 2.5(i). Sections 2.5 and 8.1 of the Repurchase Agreement, among others, provide additional details regarding the agreement by the Purchasers to transfer to the Debtors mortgage loans or interests in mortgage loans after the initial transfer to the Purchasers, against the transfer of funds from the Debtors to the Purchasers.

With respect to the agreement by the Purchasers to transfer to the Debtors mortgage loans or interests in mortgage loans not later than one hundred eighty (180) calendar days after the initial transfer, the Repurchase Agreement states,

> "Repurchase Date" shall mean, with respect to any Transaction and each Purchased Mortgage Loan, the earlier of (a) the Termination Date and (b) the date on which such Purchased Mortgage Loan shall be repurchased by a Seller hereunder, which Repurchase Date, under any circumstance, shall not be later than the date that is one hundred eighty (180) calendar days after the initial Purchase Date therefor.

*Id.* at 29.

Finally, section 2.23(a) of the Repurchase Agreement states,

> The Sellers and the Purchasers intend and acknowledge that this Agreement and each Transaction hereunder is a "repurchase agreement" and a "master netting agreement" as each such term is defined in Section 101 of the Bankruptcy Code, and a "securities contract" as that term is defined in Section 741 of Title 11 of the Bankruptcy Code, as amended.

*Id.* § 2.23(a).[3]

On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code.

## IV. ARGUMENT

### A. Standard For Summary Judgment.

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[3] Although this Motion only addresses the Repurchase Agreement meeting the definition of "repurchase agreement" under section 101(47) of the Bankruptcy Code, if this Motion is denied Calyon anticipates demonstrating at trial, among other things, that the Repurchase Agreement not only meets the definition of a "repurchase agreement" under § 101(47), but also the definitions of "securities contract" and "master netting agreement" and that, therefore, the Repurchase Agreement receives the benefits of the safe harbor provisions of sections 559 and 561 of the Bankruptcy Code, respectively.

judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In responding to the motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1413 (3d Cir. 1991). "To overcome the movant's assertion that there is no material issue of fact, the opposing party must point to specific evidence." *Burns v. County of Cambria*, 764 F. Supp. 1031, 1035 (W.D. Pa. 1991), *aff'd in part*, 971 F.2d 1015 (3d Cir. 1992); *see Williams v. West Chester*, 891 F.2d 458, 463-64 (3d Cir. 1989) (stating that the "opposing party must introduce specific evidence showing that there is a genuine issue for trial").

Moreover, a "metaphysical doubt as to the material facts" is not sufficient to avoid summary judgment. *Matsushita*, 475 U.S. at 586 (citations omitted). A "genuine issue" only exists if the non-moving party can produce sufficient evidence upon which a reasonable jury can rely to find in their favor. *Medino-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In *Anderson*, the Supreme Court explained that "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50. The Court continued:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252. If the non-moving party fails to adduce such "specific" evidence, the motion for summary judgment must be granted. *See Celotex*, 477 U.S. at 323 ("[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

As demonstrated herein, because the undisputed facts in this case unequivocally demonstrate that the Repurchase Agreement is protected by the safe harbor provisions of section 559 of the Bankruptcy Code, the Court should grant the Motion.

**B.     Calyon Is Entitled To Summary Judgment On The Counterclaim Because The Repurchase Agreement Meets The Definition Of "Repurchase Agreement" In Section 101(47) Of The Bankruptcy Code.**

The Debtors admit that they entered into the Repurchasing Agreement. *See* Counterclaim, ¶7. In fact, the Debtors admit that the parties performed under the Repurchase Agreement. Specifically, the Debtors admit that Calyon transferred funds to the Debtors on account of Eligible Mortgage Loans and that the Debtors agreed to repurchase the Purchased Mortgage Loans on the applicable Repurchase Date. *See* Counterclaim, ¶ 10.

Under the Repurchase Agreement, an Eligible Mortgage Loan is a Mortgage Loan that, among other things,

> upon purchase by the Purchasers thereof under this Agreement and application of any related Purchase to pay off any prior leinholder as required by the Custodial Agreement and hereunder, together with the related Mortgage Loan Collateral, ***is owned beneficially by the Purchasers free and clear of any Lien of any other Person other than the Administrative Agent for the benefit of the Purchasers.***

Repurchase Agreement, at 15 (emphasis added). Moreover, Mortgage Loan is defined in the Repurchase Agreement as

> ***a loan*** evidenced by a Mortgage Note and secured by a Mortgage, ***which*** Mortgage Loan ***has been acquired by the Purchasers from any of the Seller by purchase pursuant to this Agreement*** (it being understood that legal title thereof shall be retained by such Seller or, in the case of a MERS Designated Mortgage Loan, MERS as nominee for such Seller, and its successors and assigns, in each case in trust for the Purchasers, solely for the purpose of servicing such Mortgage Loan).

*Id*. at 24 (emphasis added).

Further, the Repurchase Agreements defines Purchased Mortgage Loan as "a Mortgage Loan included in the Purchased Mortgage Assets." *Id.* at 27. The Repurchase Agreement defines Purchased Mortgage Assets as "*any Mortgage Asset which has been purchased by any Purchaser* pursuant to Section 2.1(a)." *Id.* (emphasis added). The Repurchase Agreement defines Mortgage Assets as, among other things, "any and all *Mortgage Loans purchased by or transferred to the Purchasers pursuant to this Agreement* that the Custodian has been instructed to hold for the Administrative Agent for the benefit of the Purchasers pursuant to the Custodial Agreement." *Id.* at 23 (emphasis added).

The existence and performance under the Repurchase Agreement being admitted, the only remaining issue is whether the Repurchase Agreement meets the definition of "repurchase agreement" in section 101(47) of the Bankruptcy Code.

i. **Legal Standard.**

Section 101(47)(A) of the Bankruptcy Code, in pertinent part, states:

The term "repurchase agreement" (which definition also applies to a reverse repurchase agreement)

(A) means -

(i) *an agreement, including related terms, which provides for the transfer of one or more* certificates of deposit, mortgage related securities (as defined in section 3 of the Securities Exchange Act of 1934), *mortgage loans, interests in* mortgage related securities or *mortgage loans*, eligible bankers' acceptances, qualified foreign government securities (defined as a security that is a direct obligation of, or that is fully guaranteed by, the central government of a member of the Organization for Economic Cooperation and Development), or securities that are direct obligations of, or that are fully guaranteed by, the United States or any agency of the United States *against the transfer of funds by the transferee of such* certificates of deposit, eligible bankers' acceptances, securities, *mortgage loans or interests, with a simultaneous agreement by such transferee to transfer to the transferor thereof* certificates of deposit, eligible bankers' acceptance, securities, *mortgage loans, or interests* of the kind described in this clause, *at a date certain not later than 1 year after such transfer* or on demand, *against the transfer of funds*; ...[or]

> (iv) a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), or (iii), together with all supplements to any such master agreement, without regard to whether such master agreement provides for an agreement or transaction that is not a repurchase agreement under this paragraph, except that such master agreement shall be considered to be a repurchase agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (i), (ii), or (iii).

11 U.S.C. § 101(47)(A) (emphasis added).

The Repurchase Agreement is a master agreement as contemplated by section 101(47)(A)(iv) because it provides for agreements or transactions referred to in section 101(47)(A)(i). Consequently, the Repurchase Agreement will meet the definition of "repurchase agreement" under section 101(47) if

(1) it provides for the transfer of one or more mortgage loans or interests in mortgage loans;

(2) against the transfer of funds by the transferee of such mortgage loans or interests;

(3) with a simultaneous agreement by such transferee to transfer to the transferor thereof mortgage loans, or interests in mortgage loans;

(4) at a date certain not later than 1 year after such transfer or on demand; and

(5) against the transfer of funds.

*See* 11 U.S.C. § 101(47). No other requirements need to be met.

The Debtors do not allege that the Repurchase Agreement fails to meet any of these criteria of section 101(47), rather they argue the Repurchase Agreement is not a Repurchase Agreement under section 101(47) because it is a financing. It is irrelevant whether the Repurchase Agreement may be recharacterized as a financing as opposed to a true sale if it meets the requirements of section 101(47). If the requirements of section 101(47) are met, the Repurchase Agreement is a "repurchase agreement" for purposes of the Bankruptcy Code.

Thus, the Debtors' suggestion in the Counterclaim that an inquiry about whether the Repurchase Agreement may be characterized as a true sale or a secured financing is necessary to

determine whether the Repurchase Agreement meets the definition of "repurchase agreement" in section 101(47)(A), is flat wrong. In fact, having to perform such an inquiry would eviscerate the safe harbor provisions. The point of the safe harbor is to prevent "repurchase agreements" that meet the definition in section 101(47)(A) from facing recharacterization claims regarding whether the transaction is a true sale or a secured financing. As a result, having to engage in a true sale, secured financing inquiry to determine whether the Repurchase Agreement meets the definition of "repurchase agreement" in section 101(47)(A) would make the safe harbor provisions a nullity. Succinctly, the safe harbor provisions would mean nothing if to meet the safe harbor repurchase agreements had to be analyzed as if the safe harbor did not exist. If the definition of "repurchase agreement" is met, the safe harbor applies, period. There is no need for a true sale, secured financing inquiry to make that determination. This is the only reasonable interpretation of the relevant statutory provisions.

In addition, the legislative history confirms this interpretation. Specifically, in light of prior cases regarding whether repurchase agreements involving mortgage loans or interests in mortgage loans qualified as "repurchase agreements" under the Bankruptcy Code, the Bankruptcy Abuse And Consumer Protection Act ("BAPCPA") broadened the coverage of section 559 to expressly include "mortgage loans [and] interests in mortgage loans" by expanding the definition of "repurchase agreements." *See* H.R. Rep. 109-31, pt. 1, at 127, 258-59 (2005) (noting that "[e]nforcement of these agreements and arrangements free from the automatic stay is consistent with the policy goal of minimizing risk. It now includes mortgage related securities, mortgage loans, interests in mortgage related securities or mortgage loans"). Inclusion of agreements, such as the Repurchase Agreement, under the definition of "repurchase agreement" demonstrates congressional intent to grant holders of mortgage-related repurchase

agreements the rights to liquidate, terminate, accelerate, foreclose on and set off against these agreements. *See id.* at 133 (providing that Congress "intended that the normal business practice in the event of a default of a party based on bankruptcy or insolvency is to terminate, liquidate or accelerate ... repurchase agreements with the bankrupt or insolvent party.").

Moreover, the legislative history regarding section 555 and the definition of "securities contract" in section 741(7) states:

> The reference to "repurchase and reverse repurchase transactions" *is intended to eliminate any inquiry under section 555 and related provisions as to whether a repurchase or reverse repurchase transactions is a purchase and sale transaction or a secured financing.* Repurchase and reverse repurchase transactions *meeting certain criteria are already covered under the definition of "repurchase agreement"* in the Bankruptcy Code. Repurchase and reverse repurchase transactions on all securities (including, for example, equity securities, asset-backed securities, corporate bonds and commercial paper) are included under the definition of "securities contract." A repurchase or reverse repurchase transaction which is a "securities contract" but not a "repurchase agreement" would thus be subject to the "counterparty limitations" contained in section 555 of the Bankruptcy Code (i.e., only stockbrokers, financial institutions, securities clearing agencies and financial participants can avail themselves of section 555 and related provisions).

H.R. Rep. 109-31, pt. 1, at 130 (2005). Although this legislative history addresses the safe harbor of section 555 of the Bankruptcy Code, it expressly states that the intention of the section 555 safe harbor was to eliminate the inquiry under section 555 and related provisions as to whether a repurchase transaction is a purchase and sale or a secured financing. *See id.* The intention of the safe harbor under section 559 of the Bankruptcy Code is no different. As the legislative history to section 555 and the definition of "securities contract" in section 741(7) states, "[r]epurchase and reverse repurchase transaction meeting certain criteria are *already* covered under the definition of "repurchase agreement" in the Bankruptcy Code." *Id.* (emphasis added). Thus, transactions that meet the definition of repurchase agreement under section

101(47) *already* are protected by a safe harbor and, therefore, *already* are protected from engaging in an inquiry as to whether a transaction is a purchase and sale or a true financing.

There is no need to engage in an inquiry about whether the Repurchase Agreement may be characterized as a true sale or a secured financing in order to determine whether the Repurchase Agreement is a "repurchase agreement" as defined by section 101(47). The only necessary analysis is to determine whether the Repurchase Agreement meets the statutory requirements of the definition of "repurchase agreement" in section 101(47).

ii. <u>The Repurchase Agreement Meets The Definition In 11 U.S.C. § 101(47).</u>

The Repurchase Agreement meets each of the requirements of the definition of "repurchase agreement" contained in section 101(47). In fact, the analysis is quite simple.

First, the undisputed facts demonstrate that the Repurchase Agreement provides for the transfer of one or more mortgage loans or interests in mortgage loans. *See* Repurchase Agreement, at 2; §§ 2.1, 2.3, 2.23, 2.24, 3.2, 3.3 and 4.2; Counterclaim, ¶ 10. More particularly, even if the Debtors inappropriately contest that the Repurchase Agreement provides for the transfer of one or more mortgage loans, there can be no reasonable dispute that the Repurchase Agreement provides for the transfer of *interests* in one or more mortgage loans to the Purchasers. *See id.* Thus, the Repurchase Agreement meets the first requirement of the definition of "repurchase agreement" under section 101(47) of the Bankruptcy Code.

Second, the undisputed facts demonstrate that the transfer of one or more mortgage loans or interests in mortgage loans through the Repurchase Agreement is against the transfer of funds by the Purchasers to the Debtors. *See* Repurchase Agreement, at 2; §§ 2.1, 2.3, 2.23, 2.24, 3.2, 3.3 and 4.2; Counterclaim, ¶ 10.

Third, the undisputed facts demonstrate that the Repurchase Agreement contains a simultaneous agreement by the Purchasers to transfer the mortgage loans, or interests in mortgage loans, to the Debtors. *See* Repurchase Agreement, at 39; Counterclaim, ¶ 10.

Fourth, the undisputed facts demonstrate that the transfer of mortgage loans, or interests in mortgage loans, from the Purchasers to the Debtors is at a date certain not later than 1 year after such transfer or on demand. *See* Repurchase Agreement, at 29; Counterclaim, ¶ 10.

Fifth, the undisputed facts demonstrate that the transfer of the mortgage loans, or interests in mortgage loans, from the Purchasers to the Debtors is against the transfer of funds by the Debtors to the Purchasers. *See* Repurchase Agreement, at 39; Counterclaim, ¶ 10.

As a result, the undisputed facts demonstrate that the Repurchase Agreement meets each of the requirements of the definition of "repurchase agreement" under section 101(47) of the Bankruptcy Code. In sum, the Repurchase Agreement is a "repurchase agreement" under section 101(47) of the Bankruptcy Code, and is protected by the safe harbor provisions of section 559 of the Bankruptcy Code. Thus, Calyon is entitled to summary judgment on the Counterclaim.

## V. CONCLUSION

For the foregoing reasons, Calyon respectfully requests that this Court enter an order (i) granting the Motion and directing the entry of judgment in favor of Calyon on the Counterclaim; and (ii) granting to Calyon such other and further relief as is appropriate, including without limitation, its attorneys' fees and costs incurred regarding the Counterclaim.

Dated: September 21, 2007

ECKERT SEAMANS CHERIN & MELLOTT, LLP

_____
Michael G. Busenkell (No. 3933)
Margaret F. England
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Telecopier: (302) 425-0432

-and-

Benjamin C. Ackerly
Jason W. Harbour (DE No. 4176)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East tower
951 E. Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

-and-

Peter S. Partee
Scott H. Bernstein
200 Park Avenue, 53rd Floor
New York, New York 100166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

Counsel to Calyon New York Branch

53064.001009 RICHMOND 2123999v7