# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
CHRISTOPHER S. SONTCHI                              824 MARKET STREET
        JUDGE                                    WILMINGTON, DE 19801
                                                    (302) 252-2888
```

March 10, 2008

HUNTON & WILLIAMS LLP
Benjamin C. Ackerly
Jason W. Harbour
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA  23219

Peter S. Partee
Scott H. Berstein
200 Park Avenue, 53rd Floor
New York, New York  100166-0136

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
James L.  Patton, Jr.
Robert S. Brady
John T. Dorsey
Erin Edwards
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

ECKERT SEAMANS CHERIN
& MELLOTT, LLC
Michael G. Busenkell
Margaret F. England
300 Delaware Avenue, Suite 1210
Wilmington, DE  19801

Counsel to Calyon
New York Branch

QUINN, EMANUEL, URQUHART
OLIVER & HEDGES, LLP
Susheel Kirpalani
 James C.  Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010

Counsel to American Home Mortgage
Corp.; American Home Mortgage
Acceptance, Inc.; American Home
Mortgage Servicing, Inc.; and American
Home Mortgage Investment Corp.

RE:    **Calyon New York Branch v. American Home Mortgage Corp., et al.,**
       **Adv. Proc. No. 07-51704**

Dear Counsel:

On January 4, 2008, the Court issued an Opinion, constituting its findings

of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure

7052, in connection with the Phase I trial in this adversary proceeding.[1]   On January 15, 2008, the Court entered an Order in connection with its Opinion. Among other things, the Court's Order incorporated the Court's Opinion in full.

On January 25, 2008, Calyon filed the Motion of Calyon New York Branch To Alter or Amend (the "Motion to Amend") the Opinion and the Order "solely with respect to the Court's conclusions that (i) the Purchasers did not pay a higher price as would have been the case if they had bought the mortgage loans on a servicing released basis; (ii) the mortgage loans sold under the Repurchase Agreement were sold on a servicing retained basis; and (iii) the Debtors retained the right to designate the servicer of the mortgage loans."   Calyon argues that the undisputed documentary and testimonial evidence in the record requires the opposite conclusion on all three points.

The Debtors disagree.  As an initial matter, the Debtors argue that Calyon has failed (as required under the applicable rules) to establish sufficient grounds for the extraordinary relief requested, *i.e.*, Calyon has failed to establish (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.  The Debtors further argue that the testimonial evidence upon which Calyon relies in support of its argument should not be considered as it was previously excluded *at the request of Calyon* from the Court's consideration as either irrelevant or

---

[1] *Calyon New York Branch v. American Home Mortgage Corp. (In re American Home Mortgage Holdings, Inc.)*, 379 B.R. 503 (Bankr. D. Del. 2008).

inadmissible under the parol evidence rule.[2]  Finally, the Debtors argue that the evidence supports the Court's decision.  The Court agrees with the Debtors' argument *in toto* and stands by its previous findings of fact that the mortgage loans sold under the Repurchase Agreement were sold on a servicing retained basis.

## Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The legal predicates for the relief requested are Rules 7054 and 9023 of the Federal Rules of Bankruptcy Procedure.

## Factual and Procedural Background[3]

On January 25, 2008, Calyon filed its Motion to Amend.  The Debtors filed a response on February 8, 2008 and  Calyon filed its reply on February 15, 2008. Although Calyon requested oral argument, the Court did not consider it necessary.

## Applicable Legal Standard

Calyon argues that it is within the Court's discretion to alter or amend the Opinion and Order because the Order is an interlocutory order and no final

---

[2] *Id.* at 517.

[3] On January 4, 2008, the Court issued its Opinion.  Rather than repeating the lengthy factual and procedural background set forth in the Opinion, the Court incorporates the factual findings contained therein.

order has been entered.[4]  Calyon further argues that the deadlines and standards imposed under Rule 59(e) of the Federal Rules of Civil Procedure (which is incorporated by Bankruptcy Rule 9023) are not applicable to its Motion.[5]

Notwithstanding the foregoing, Calyon acknowledges that courts often employ the standards under Rule 59(e) to motions to amend interlocutory orders.[6]  Indeed, the very case cited by Calyon in support of its argument that the Rule 59(e) standards should not be applied notes, as an aside, that "courts [in the bankruptcy context] routinely characterize motions to rehear/reconsider interlocutory orders as Rule 59(e) motions."[7]  The policy underlying the standards governing a motion to alter or amend a final order under Rule 59(e) is equally applicable to a motion to alter or amend an interlocutory order under

---

[4] Paragraph 7 of the Order provides that "[b]ecause this Order adjudicates fewer than all the claims asserted in this adversary proceeding and does not end this adversary proceeding as to such claims, then pursuant to Rule 54(b) of the Federal Rules of Civil Procedure as made applicable to this adversary proceeding by Rule 7054 of the Federal Rules of Bankruptcy Procedure, this Order is not final order and may be revised at any time prior to entry of a final order adjudicating all the claims asserted in this adversary proceeding." *See also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

[5] *Colonial Bank v. Freeman (In re Pacific Forest Prods. Corp.)*, 335 B.R. 910, 916 (Bankr. S.D. Fla. 2005) ("It is well-established that it is within a bankruptcy judge's discretion to reconsider any interlocutory order made prior to the entry of final judgment.").

[6] *See, e.g., Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'  Thus, those decisions may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'") (citations omitted).

[7] *In re Pacific Forest Prods. Corp.*, 335 B.R. at 917.

Rule 54(b) – "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."[8]  This is especially true in the bankruptcy context where the very nature of the practice involves the routine entry of interlocutory orders.  Thus, this Court will apply the Rule 59(e) standards to Calyon's Motion to Amend.

"A motion for reconsideration . . . is an extraordinary means of relief in which the movant must do more than simply reargue the facts of the case or legal underpinnings."[9]  The motion "must rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice.'"[10]  Generally, a motion for reconsideration is "not granted unless 'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[11]

---

[8] *Official Comm. of the Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).

[9] *HHCA Texas Health Servs., L.P. v. LHS Holdings, Inc. (In re Home Health Corp. of Amer., Inc.)*, 268 B.R. 74, 76 (Bankr. D. Del. 2001).

[10] *Id.* at 76-77 (quoting *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) ).

[11] *Key Mechanical Inc. v. BDC 56 LLV (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003).

## Legal Discussion

### A.    Calyon has failed to meet its burden.

Calyon admits in its reply brief that it cannot point to an intervening change in controlling law or new evidence. [12]  Rather, Calyon relies solely on the argument that "the conclusion that the mortgage loans were sold servicing retained is a clear error of law that would result in manifest injustice."[13] Although Calyon cleverly couches its argument as a challenge to the Court's "conclusions" and states that the Court made a "clear error of law," Calyon's actual argument is that the Court's *findings of fact* are not supported by the evidence.[14]   Thus, in order to prevail, Calyon must establish that the Court overlooked some factual matter presented to it "that might reasonably be expected to alter the conclusion reached by the court."[15]   Calyon cannot meet that burden.

The Court disagrees with Calyon's argument that "**[a]ll** of the evidence supports the conclusion that the mortgage loans were sold servicing released."[16] In fact, the only evidence properly before the Court – the clear and unambiguous terms of the Contract – supports the Court's finding of fact that the mortgages

---

[12] Reply In Support Of Motion Of Calyon Bank New York Branch To Alter Or Amend at ¶25.

[13] *Id.*

[14] *Id.* at ¶22 ("As discussed above, the record contains no evidence whatsoever that supports the conclusion that the mortgage loans were sold servicing retained.  This is not a situation where there is evidence on both sides of an issue for the court to weigh.  **All** of the evidence supports the conclusion that the mortgage loans were sold servicing released.") (emphasis in original).

[15] *In re BDC 56 LLC*, 330 F.3d at 123.

[16] Reply at ¶22.

were sold to the Purchasers under the Contract on a servicing retained basis.[17]

Moreover, assuming, *arguendo*, that the Court's factual finding is incorrect, it would not affect the ultimate decision of the Court arising from that finding, *i.e.*, that the servicing of mortgage loans is *not* protected under the safe harbor provisions because: (i) under applicable law, the portion of the contract providing for the servicing of the mortgage loans is severable from the portion of the contract providing for the sale and repurchase of mortgage loans; and (ii) the portion of the contract for servicing mortgage loans is neither a "repurchase agreement" nor a "securities contract" under the Bankruptcy Code.[18]  Thus, the Motion to Amend must be denied because Calyon has failed to meet its burden of establishing that the Court overlooked evidence that "might reasonably be expected to alter the conclusion reached by the court."[19]

> **B.    To the extent the testimonial evidence upon which Calyon relies is relevant and admissible, it fails to support Calyon's interpretation of the Contract.**

In response to the extrinsic evidence that the Debtors presented in support of their argument that the Contract constituted a disguised secured financing, Calyon repeatedly argued that the Court's consideration of any evidence beyond the four corners of the Contract was both inappropriate and unnecessary.  The

---

[17] *See, infra,*  pp. 9 - 12.

[18] *See, infra,*  pp. 13 - 17.

[19] *In re BDC 56 LLC,* 330 F.3d at 123.

Court agreed with that argument.[20]  Specifically, the Court held that:

> The terms of the Contract relating to the sale and repurchase of mortgage loans are the only relevant evidence before the Court.  As such, the bulk, if not all, of the extrinsic evidence proffered by the Debtors is simply irrelevant.  The remaining relevant, extrinsic evidence, if any, must be excluded under the parol evidence rule.[21]

In a remarkable reversal of position, Calyon now asks the Court to look to extrinsic trial testimony that supposedly supports its reading of the Contract. Regardless of whether Calyon's argument is barred by the law of the case doctrine,[22] the Court stands by its previous ruling that the terms of the Contract relating to the sale and repurchase of mortgage loans are the only relevant evidence before the Court.  Moreover, the clear and unambiguous terms of the Contract support the Court's finding of fact that the mortgages were sold to the Purchasers under the Contract on a servicing retained basis.[23]

Even if properly considered, however, the trial testimony fails to support Calyon's interpretation of the Contract or to identify a specific provision in the Contract regarding either (a) the sale of the mortgage loans on a servicing released basis or (b) the higher purchase price of the mortgage loans attributable to the servicing rights.   Mr. Pilcer, upon whom Calyon chiefly relies, merely

---

[20] *In re American Home Mortgage Holdings, Inc.*, 379 B.R. at 517.

[21] *Id.*

[22] 18 MOORE'S FEDERAL PRACTICE, §134.20[2] (Matthew Bender 3d ed.) ("The Supreme Court has defined the law of the case as a doctrine that " '... posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' "").

[23] *See, infra,*  pp. 9 - 12.

testified to his "belief" and "understanding" regarding the agreement – nothing more.  As the Court noted at trial, Mr. Pilcer's opinions described merely "his understanding as to the provisions of the contract," and therefore are not legal conclusions.  Moreover, even if understanding were relevant, Mr. Love testified to his very different understanding that, from the Debtors' perspective, the sale was servicing retained.  Finally, Calyon's argument ignores that Mr. Pilcer's self-serving testimony on these issues was simply not credible.  Even if the Court were to consider extrinsic evidence, it would find contemporaneous documentation or testimony by a properly qualified expert more credible than the after-the-fact characterization of the transaction by an officer of the plaintiff.[24]  Thus, to the extent the testimonial evidence upon which Calyon relies is relevant and admissible, it fails to support Calyon's interpretation of the Contract.

C.    **The clear and unambiguous terms of the Contract support the Court's finding of fact that the mortgages were sold to the Purchasers under the Contract on a servicing retained basis.**

Calyon argues that "**[a]ll** of the evidence supports the conclusion that the mortgage loans were sold servicing released."[25]  The Court disagrees.  Indeed, for a number of reasons, the only evidence properly before the Court – the clear and unambiguous terms of the Contract – supports the Court's finding of fact

---

[24] Although the Court does not know whether Calyon intended to call its expert witness on this issue, it notes that the testimony of that witness was previously excluded from evidence on the basis of spoliation. *See* Order Granting The Motion In Limine Of Debtor-Defendants And Counterclaim Plaintiffs To Exclude Expert Testimony And Report Of Mark H. Adelson [Docket No. 65].

[25] Reply at 12.

that the mortgages were sold to the Purchasers under the Contract on a servicing retained basis.

First, the Contract specifically appoints AHM Servicing as the Servicer, states that AHM Servicing cannot be removed as the servicer absent a Servicer Default, and authorizes AHM Servicing to subcontract servicing to a third party. If Calyon had purchased the mortgage loans on a servicing released basis, it would have been able to unilaterally, and within its sole discretion, replace AHM Servicing as the Servicer at any time.    Instead, the Contract limits the circumstances under which Calyon can do so and authorizes AHM Servicing to appoint a replacement servicer.

Second, "servicing" was not sold along with the "Mortgage Assets" and "Mortgage Loans" under the Contract.    The Contract provided for the "Purchase" of "Eligible Mortgage Loans" (*i.e.*, Base Rate Purchases, Eurodollar Purchases, and Wet Purchases) and "Mortgage Assets" - - but nothing more.  The Seller (American Home Mortgage Corp.) expressly "retained" title to the mortgage loans for the purpose of servicing them.[26]  The "Mortgage Asset" definition specifically identified various assets that were sold to Calyon, but did not specifically identify servicing as an asset being sold.  So in contrast to the clear and explicit inclusion of, among other things, "Advance Funds," "Collections," "Take-Out Commitments and Hedges identified on Hedge Reports," and even "chattel paper" listed in this definition, servicing is not

---

[26] Contract, p. 24 ("Mortgage Loans" definition).

delineated.[27]   Had this sophisticated lender purchased the mortgage loans servicing released, it surely would have included that term in the "Mortgage Asset" definition.  Calyon's failure to do so with respect to such a significant contract term alone reveals servicing was not a "Mortgage Asset."[28]

Third, the text of section 11.1 of the Contract further supports the Court's finding that the mortgage loans were sold on a servicing retained basis.  The opening clause of section 11.1 states that "the servicing, administration and collection of the Mortgage Assets shall be conducted by the Servicer."  If "servicing" were itself a Mortgage Asset, this clause would refer to the "servicing . . . of the servicing" – an absurd and circular reading.[29]  Moreover, the provision distinguishes between events of "Servicer Default" and other "Events of Default."  Only in the event of a "Servicer Default" is there explicit authorization for Calyon to appoint a new Servicer.  Both aspects indicate American Home Mortgage Corp. sold the loans servicing retained, retained the right to designate

---

[27] *See* Contract, pp.23-24 ("Mortgage Asset" definition).

[28] *Cf. John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 670 n. 8 (2d Cir. 1983) ("New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary."); and *Israel Discount Bank Ltd. v. Gottesman (In re Ore Cargo, Inc.)*, 544 F.2d 80, 82 (2d Cir. 1976) ("While the contract also granted the bank certain rights not conferred by the U.C.C., notably a right of set-off, this factor is of little aid to the Bank.  Applying the maxim, *expression unius est exclusion alterius*, the failure of . . . a sophisticated commercial lender, to include a similar specific reference to tort claims precludes our divining or implying such a right on the basis of the general language of the agreement.").

[29] *Cf. In re American Home Mortgage Holdings, Inc.*, 379 B.R. at  523 ("[S]ervicing rights cannot constitute an 'interest in a mortgage loan' for purposes of section 101(47) or section 741(7) because the text in section 541(d) of the Bankruptcy Code treats 'servicing' separately from 'an interest in a mortgage.'  Since section 541(d) refers to *servicing both* mortgages and *interests in mortgages*, servicing itself cannot be an 'interest in mortgages.'  If servicing rights were an interest in mortgages, then section 541(d) would be referring to 'servicing interest in servicing' – an absurd reading.") (emphasis in original).

the servicer, and that (as a necessary corollary) Calyon paid only what was necessary to purchase the loans servicing retained.   When sophisticated parties take pains to elaborate upon a distinction in one context and do not take any steps to include the distinction in another, the results are intentional.   The reference to "Servicer Defaults" shows the parties knew servicing was separate, and Calyon's failure to reference the sale of servicing assets clearly shows that these assets were not sold.

Fourth, Calyon would have the Court read the "general intangibles" included in the definition of Mortgage Assets to encompass servicing rights. That definition, however, includes general intangibles relating to Mortgage Assets.  The Court already reviewed and rejected the proposition that servicing is "related to" a mortgage loan, finding instead it is a separate asset that is severable from Mortgage Loans.[30]

Fifth, Calyon's citation to a previous bench ruling by the Court in connection with the sale of the Debtors' servicing business is to no avail.[31]  While contract rights may constitute "intangible property," that does not transform the independent and severable asset of servicing into a "general intangible" that is "related to" Mortgage Assets.

---

[30] *Id.* ("[T]he servicing rights and the right to designate the servicer are not 'related terms' to those portions of the Contract that constitute a repurchase agreement.  As a separate asset, servicing is not related to the underlying transaction, *i.e.*, the purchase and sale of mortgage loans as part of a financing transaction.  This is further evidenced by the fact that many repurchase agreements do not address servicing, and separate agreements may govern servicing exclusively.").

[31] Motion to Amend, ¶9 (citing Tr., October 23, 2007, p. 8:12-9:7 ("a contract is a type of intangible property")).

> **D.**    **Assuming, *arguendo*, that the Court's factual finding is incorrect, it would not affect the ultimate decision of the Court.**

The Court made the following factual findings relating to the sale of the

mortgage loans on a servicing retained basis:

> 1)    "In this case, the mortgage loans were sold to the Purchasers on a servicing retained basis, *i.e.*, the Debtors retained the right to designate the servicer under the loans."[32]
>
> 2)    "[T]he Contract provides that the mortgage loans were sold to the Purchasers on a servicing retained basis, i.e., the Debtors retained the right to designate the servicer under the loans."[33]
>
> 3)    "To the extent the Contract concerns the purchase and sale of the right to designate the mortgage servicer (as opposed to setting the terms and conditions of the actual servicing) it is still different from an agreement for the purchase or sale of the mortgage itself. . . . In this case, the mortgage loans were sold to the Purchasers on a servicing retained basis, *i.e.*, the Debtors retained the right to designate the servicer under the loans.  Thus, as drafted by Calyon and agreed to by the parties, the Contract itself severs the owner of the mortgage loans (the Purchasers) from the party with the right to designate the servicer (the Debtors).  This is, in and of itself, strong evidence of the parties' intent to sever the servicing or the right to designate the servicer from the sale and repurchase of the mortgage loans."[34]
>
> 4)    "In this case, the Purchasers can liquidate their investment by selling the mortgage loans on a servicing retained basis, albeit at a lower price than if they could sell the loans on a servicing released basis.  However, as the Purchasers did not pay a higher price in purchasing the mortgage loans under the Contract in the first instance (as would have been the case if they had bought the loans on a servicing released basis), the Court is not particularly troubled by their receipt of a lower price.    Indeed, if the Court were to allow otherwise, the Purchasers would receive a windfall – the

---

[32] In re *American Home Mortgage Holdings, Inc.*, 379 B.R. at 510.

[33] *Id.* at 520.

[34] *Id.* at 521.

right to designate the servicer without paying the concomitant premium."[35]

In each instance, a careful reading of the Opinion reveals that, assuming, *arguendo*, the Court's factual finding is incorrect, it would not affect the ultimate decision of the Court.[36]

The first finding is contained in the "General Background" section of the Court's "Statement of Facts."  Although it constitutes a finding of fact, it is not specifically related to any of the three issues before the Court.[37]

The second finding is contained in an introductory section of the Opinion discussing whether the portion of the Contract providing for the servicing of mortgage loans is protected under the safe harbor provisions of sections 555 and 559 of the Bankruptcy Code.  As such, it is used to frame the issue before the Court and is not specifically related to the Court's ultimate conclusion.

The third finding is more directly related to a conclusion by the Court. That finding is contained in the Court's discussion of whether, under New York

---

[35] *Id.* at 522.

[36] *In re BDC 56 LLC*, 330 F.3d at 123 (Generally, a motion for reconsideration is "not granted unless 'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'").

[37] *See In re American Home Mortgage Holdings, Inc.*, 379 B.R. at 507-508 ("The dispute centers on three issues.  The first issue is whether the sale and repurchase of mortgage loans under the contract in question is a 'repurchase agreement' as defined in section 101(47) of the Bankruptcy Code and thus, pursuant to sections 362(b)(7), 555 and 559 of the Bankruptcy Code, the rights of the non-debtor party to the contract related to the sale and repurchase of mortgage loans are not stayed, avoided or otherwise limited by the operation of any provision of the Bankruptcy Code . . . The second issue is whether the entirety of the contract is a 'repurchase agreement.'  Specifically, is the portion of the contract providing for servicing of mortgage loans (as opposed to the sale and repurchase of mortgage loans) also protected under the safe harbor provisions . . . The third and final issue is whether the Court should require the Debtors to transfer the rights and obligations relating to servicing the mortgage loans to the plaintiff.").

law, the portion of the Contract providing for the servicing of the mortgage loans is severable from the portion of the Contract providing for the sale and repurchase of mortgage loans.   The Court determined that "[a]pplying the controlling law to the unambiguous terms of the Contract, it is clear that the servicing of the mortgage loans is severable from the sale and repurchase of mortgage loans."[38]   The primary basis for the Court's conclusion was its finding that the terms, nature and purpose of a repurchase agreement are different from an agreement relating to servicing mortgage loans.[39]   Alternatively, the Court found that, assuming, *arguendo*, that the Contract concerns the purchase and sale of the right to designate the mortgage servicer (as opposed to setting the terms and conditions of the actual servicing) it is still different from an agreement for the purchase or sale of the mortgage itself and, thus, is severable.   Although the Court noted that its finding that the Contract itself severs the owner of the mortgage loans (the Purchasers) from the party with the right to designate the servicer (the Debtors) was "in and of itself, strong evidence of the parties' intent to sever the servicing or the right to designate the servicer from the sale and repurchase of the mortgage loans," that was not the sole or even primary basis of the Court's conclusion.[40]   Had the Court determined that the mortgage loans had

---

[38] *Id.* at 521.

[39] *Id.*

[40] *Id.*

been sold servicing released it would have still concluded that the servicing of the mortgage loans is severable from the sale and repurchase of mortgage loans.

Similarly, the fourth finding is contained in the Court's discussion of whether the servicing of the mortgage loans is severable from the sale and repurchase of mortgage loans.  At trial, Calyon argued that severing the servicing provisions of the Contract would improperly impair the Purchasers' ability to liquidate the mortgage loans, thus, frustrating the purpose of a repurchase agreement and the safe harbor provisions.  The Court found that Calyon's argument was contrary to the facts before the Court because the Purchasers could liquidate their investment by selling the mortgage loans on a servicing retained basis, albeit at a lower price than if they could sell the loans on a servicing released basis.[41]  The Court went on to note that "as the Purchasers did not pay a higher price in purchasing the mortgage loans under the Contract in the first instance (as would have been the case if they had bought the loans on a servicing released basis), the Court is not particularly troubled by their receipt of a lower price."[42]

The Court's observation, which admittedly may be characterized as *dicta*, does not affect its finding that the liquidity of the mortgage loans was not affected by the Court's conclusion that the Contract was severable.  The point of the Court's discussion was that, regardless of whether the Court ultimately

---

[41] *Id.* at 522.

[42] *Id.*

determined that the mortgage loans were sold servicing retained or servicing released, the mortgage loans could be immediately liquidated on a servicing retained basis, albeit at a lower price.  Moreover, the entire discussion was an alternative argument in support of the Court's conclusion based upon extrinsic evidence that the Court had already ruled should not be considered.[43]  Thus, had the Court determined that the mortgage loans had been sold servicing released it would have still concluded that the servicing of the mortgage loans is severable from the sale and repurchase of mortgage loans.

## Conclusion

For the reasons set forth herein, the Court will deny the Motion of Calyon New York Branch To Alter or Amend.  An order will be issued.

Very truly yours,

Christopher S. Sontchi

CSS/cas

---

[43] *Id.* at 517.